These early morning hours get you up and ready to go. May it please the court, counsel. Go give counsel a second here. Your Honor, I would like to reserve five minutes for rebuttal. You have your name for the record, please. My name is Mark Wine. I am the counsel for ARCA, Inc. and ARCA California, Inc., the appellants in this matter. Obviously, we're here because we had a summary judgment granted against us. We believe quite strongly we were deprived of a proper day in court on the false advertising claims brought under Lanham Act, Section 42A1B. This case is unique in my experience for several reasons. One is simply the timing and the path that we followed. Many complaints were made by the appellant or Papali about the state of the record in certain respects. I think it's important to note that the discovery closed in this case more than three and a half years ago. We waited with successive trial dates for more than two years when the judge, surprisingly, after denying summary judgment in 2006, renewed on the motion of the appellee a motion for summary judgment without a change in the factual record, without any single change since discovery was closed, and then granted summary judgment. I submit these parties have been competing since the early 2000s. So more than half the time that they have been competing, we have been waiting for trial. As the coroners know, the damages in other areas typically update the evidence right before trial for the experts to consider. That's typically done in all courts to my knowledge. What exactly are your damages here? Well, the damages are the loss of business, and they are small. You got the contract. They are small. It is the injunctive relief. Well, what loss of business are you referring to? You got the contract. If this matter was set for trial, we would, as I've just indicated, update the damages, and the damages would be substantial. They're not in the record as of the time of the hearing. I'm not disputing what was in the record. Let's go back to the time of the summary judgment, which is what we're here to think about. What are your damages as of then? They were nominal. Any? They were nominal. I don't know what you mean. One dollar or zero? Well, I think it would be difficult to predict. Because of the updating, I think they were nominal. I'm not going to say they were zero here. Okay. But the injunctive relief in the Ninth Circuit, unlike some circuits, for example, the Second Circuit, where Judge Scullin has practiced and was the judge, there is no requirement that there be damages if there's an injunctive relief that's sought. What would you have the judge enjoin them from saying or doing? Two forms. It would be to continue the conduct. There's no record here that this conduct could not be resumed. And, in fact, I think the record of trial would be that the conduct. . . What conduct specifically would you have them enjoin? Making statements about the inability of anyone else to process CFC 11, the conduct that they're processing. . . I don't see where they say that. Well. . . Are you referring to exhibit 2888, ER 2888? It would be in the second opinion and the first. And in the section that refers to the findings of fact. . . I brought the wrong one. It's in my notes. I'm looking at what I'm thinking, or maybe thinking of, It says one provider has dominated the refrigerator retirement program in California for eight to ten years due to the cost involved in building infrastructure because no other company could handle the polyurethane. Is that the one you're . . . That's the one I'm thinking of. See, I read that to mean no other company besides them could. . . besides your client could handle it. One provider. . . They said one provider has dominated it. You are correct. There's another reference that they made that's in the record, and I will take the time to find it if you wish to do so. I'm just trying to put my finger on what you want, Judge Stringer. They said that our process was not successful, a successful process in processing the polyurethane foam containing CFC-11. And in that statement . . . Let me see if I can find it. At the opening, it's at the record at 1 ER 93, and at 4 through 10, lines 4 through 10, and at ER 18, 17, and 18. Now, if I go to that . . . Under the genuine issue sections 60 to 65 in the motion for summary judgment, and its reference to the motion for summary judgment is made by JACO at page 12, lines 22 through 24. What's it say? I'm referring to the judge's opinion recapping where she says, ARCA does not dispute the existence of JACO's patent for the recycling process. They do, however, dispute whether JACO actually developed the process, and whether they, JACO, are the only company who can handle large quantities of CFC-11. Then it goes on and cites the record, JACO provides no evidence to refute the transmission and communication of the allegedly false statements. And then it goes on to say, a reasonable juror could find that some of JACO's communications contain false statement of facts, CEG, genuine issue 74. JACO has developed the patent process, and genuine issue 74B, no other company could handle large quantities of CFC-11. Well, it's the latter statement that Judge Silverman was asking you about, because it appears in context that the no other company was not referring to JACO.  I understand that, that that phrase, there's some ambiguity in the phrase, but when you look at it in context, it appears that it's actually talking about the state of the world before JACO entered the market, was that up until they came along, nobody but you supplied this process. Well, those statements were made, but those statements are in the record, because they said that our process was not successful in disposing of the CFC-11s. Okay, where's the page reference to that statement? Maybe you can supply it to us later. Yeah, I have my full counsel looking at that. I think that you're obviously focusing on an issue of how to deal with the specific misrepresentations that the district court found. We're focused on the appeal on two things, the bad faith and the treatment of the bad faith, and the issue that came up after the appeal was lodged, which is the Baden case and what applicability, if any, it has to this record. I think it is important to note that this case is unusual because of the two opinions for summary judgment, and the one provides evidence of the nature of the disputed record in this case, and the two are very difficult to reconcile. What was done properly in the first opinion in dealing with bad faith and recognizing that the Zenith bad faith standard only applies to patent-related statements was not carried over to the second opinion, where all the statements presumably, because they're not mentioned serially, were dealt with similarly with respect to the application of the Zenith bad faith standard. That simply is not supported by the law. Zenith is quite clear. It refers to patent statements or patent marketplace statements, not to other statements of false advertising, such as the ones we've been discussing about the ability to process large amounts of CFC and the statement that the process was different than that used by ARCA. So at the very least, we believe the court must remand those non-patent statements for trial to a jury since the application of the bad faith test to those statements is, we believe, flatly wrong under the law and can't be harmonized with the Zenith case. The second opinion that we think we need to deal with is Baden. Baden, as I said, came up after the district court had had a chance to look at this case and really deals with categorization of claims and the scope of coverage of 43A between 43A1A and A1B. First of all, a lot of writing has been done in the trademark community about Baden, a lot of dispute, but one thing is clear. Baden is not binding on this court. It's a federal circuit opinion in the area of trademark law that is certainly something to be regarded by this court, but it's not binding. You said you wanted to save five minutes, and that's where you are. You can keep going or you can use it up. Well, one other statement. I think that Baden misinterprets the Ninth Circuit case law from Cybersound in reaching its results. Cybersound is a much narrower opinion, and also improperly, Baden does extend K-Star beyond the scope of the holding found by the Ninth Circuit in the classic media case of 2008. I'll reserve the rest of my time. Thank you, Mr. White. May it please the Court, my name is Yale Lewis. I'm Hendrickson Lewis in Seattle, Washington, appearing on behalf of Jayco Environmental and the individual defendants. Your Honors, for the convenience of the Court, I would like to focus directly on what are alleged to be the statements that ARCA complains about. In the Jayco brief, the proposals are laid out on pages 13 through 16. I mean, it seems obviously you already know that, just as a point of reference. They've claimed that they lost 10 contracts, and let's look at those 10 contracts. Counsel has acknowledged they weren't damaged, they didn't lose any money, but wants to focus on the 10 contracts. Well, on three of the 10 contracts, it's clear, as District Court found and is obvious, ARCA didn't bid on three of them. They won five of them. The only ones that they have any complaint about, legitimate complaint about, were not in the state of California. One was Fort Collins, and the other was Pacific Power, which is Utah. So there are only really two contracts. There is no evidence in the record that suggests that anything in the statement that Jayco made to the California Public Utilities Commission was before the two out-of-state utilities when they made their decisions. There's nothing in the record, or any good reason to suspect, that the cease-and-desist communications between Jayco and the Los Angeles Department of Water and Power were in the record, or anything that was looked at by either Fort Collins in Colorado or by Pacific Power in Utah. So regardless of what was or was not in those statements, it seems crystal clear that that didn't reach or have any effect on the only two contracts that ARCA, quote, lost. And it's also crystal clear that ARCA has no evidence that either of those two contracts were lost because of anything that Jayco said about his patent, or certainly anything that was said in his petition to the California Public Utilities Commission, or to the LAWP. And in fact, Mr. Cameron was examined, and he said specifically, under oath, that nobody at Fort Collins had ever told him that they lost, that they granted their contract to Jayco because of anything about patent. He said the same thing about Pacific Gas and Electric. He said the same thing under oath about Pacific Power, the Utah company. So there's zero evidence to suggest that anything that Jayco said had any effect on the decision of those two companies to award contracts, competitive open bid contracts to Jayco. So your point here is that there was no damages. Is that correct? Well, it's more than no damages. There's also – well, no damages is the ultimate yes, sir, Your Honor. But getting to that, there's also no – the statements were obviously not material, and there's no evidence to suggest that they had any impact on the decision. So it starts right in the beginning and tips off each of the elements. Do you agree or disagree with the proposition that opposing counsel suggested that, in this circuit, the absence of actual damages does not prevent, in an appropriate case, injunctive relief? In an appropriate case, yes, I do not disagree with that, Your Honor. So simply saying no damages without saying anything else doesn't get you all the way home? Well, that would be correct, Your Honor, and that's why I qualified the answer to the previous question. It wasn't simply damages. But it's not material. It was not material, and there's no evidence it had any impact on the purchasing decision. I'll say also, Your Honor, there is absolutely no evidence that the statements were false as opposed to potentially misleading, and if it's not false, the presumptions don't apply, and if it's not false, then you do not get in this circuit an injunction without damages. What are the specific statements that you're concerned about here when you say the word false? What are we referring to? Well, counsel has talked about a couple of statements, one which the Court has already dealt with, I think, quite appropriately. It's ambiguous rather than clear. Well, the District Court found, I think, out of context that it was ambiguous. I think you, Your Honor, said it could be ambiguous. But in context, it's not ambiguous. In context, it's not at all ambiguous. My point was even if it were ambiguous, that means as a matter of law it's not false because a statement that is ambiguous is as a matter of law not false but might be misleading. So there is no evidence asserted by anybody correctly that would suggest the statements were false as opposed to potentially misleading. The statements that ARCA is making in this case, I mean in this appeal, that JACO in its proposal to the California Public Utilities Commission said that the way the two companies treated CFC 11 was different was not something that ARCA complained about below. Below, they complained about another part of that statement, which after Baden was obviously no longer valid. So they changed between the District Court and here the statement that they were complaining about. It was a statement that it's an entirely different approach or something? Yes, sir, Your Honor. That was not something. There's no support in the record for the proposition that that was before the District Court. The District Court didn't look at it. It didn't say that. It wasn't in the uncontroverted statement of facts. It wasn't in the conclusions. It is a brand-new complaint, a brand-new post-Baden complaint that ARCA for the first time raises to this Court, and it's wrong. Even if they were correct, it's not something that is appropriate before the Court now. Is it a false statement in the context that it's true? It is not a false statement in the context, Your Honor. One uses the pulverization. The other one uses the insinuation. Is it totally different? Yes, sir, Your Honor. And I think recognized there are a number of references in the material that it hasn't been focused on, but recognized by all sort of national and international agencies as being very different. So, in conclusion, the statement to the California Public Utilities Commission were all appropriate. Significantly, too, the California Public Utilities Commission doesn't award contracts. It doesn't accept proposals. The only testimony in the record that dealt with whether or not there was confusion was categorically opposed to the statement's decisions that ARCA has taken. There are so many issues I'd be very happy to respond to any question that the Court might have. I don't have any other prepared remarks. Well, thank you, Mr. Lewis. Lorraine, back to you. I misspoke about the damages. I was focused in on the LADWP as the Court was focused. There was no damages claimed for LADWP. The damages report that was submitted had several millions of dollars of damages in the lost projects from the lost opportunities that we believe were lost as a result of the general market statements that were being made by JACO after stealing our ideas, after Mr. Dunham left our employee with no experience in appliance recycling of the type we were conducting and patented something that was absolutely the same as ours, admitted under oath that these were not his ideas other than the incineration, and said he did not invent them and Mr. Jacobson did not invent them. And then to go to the market and claim not only innovation but exclusive source and the ability to do it better than anyone else is the very type of damage that if it has a tendency to deceive, the LADWP is meant to protect. And you made reference to the differences between the methods. It's in the second opinion in the discussion at ER 58 and 59 and 60 where it talks about the frailties of the approach that they claimed we were using, using Edelman equipment that it didn't completely dispose of, that it would leave a half-life of waste of these CFCs in a dump environment and that theirs was a better and more complete method of disposing CFC 11. I think that statement stands. It was to the California Public Utilities Commission, and it is a false statement. I think it is also a false statement that the two that we've even admitted might be a patent statement. There's the exclusive source statement. Again, a false statement it is the same source. So what you get down to is are you going to let someone who is a competitor off the hook entirely without a jury being able to evaluate the quality of the evidence, evaluate Mr. Dunham's testimony simply on the basis that the judge changed her mind on whether or not Mr. Reyes's testimony was something that deserved to go to the jury because that's really what the second decision turned on. She said it was not material. Because it appeared to have a tendency to deceive Mr. Reyes based on his testimony. In the second opinion, she said, I'm going to think about what his testimony really means and did an interpretation of the Reyes testimony to reach the decision that it was not material. We think that's wrong. We also think that it's wrong that she did apply the bad faith standard. Even if you apply the bad faith standard to the patent-related statements, we think that those also should survive and be given to the jury. There is ample evidence of objective bad faith here. The objective subjective test for bad faith is very difficult to apply. And you can read every case, but it basically means is there evidence that a jury could find that there was no reasonable good faith basis for someone to maintain a suit or make the claims about the patents given what is in the undisputed record, not the subjective record, the objective record. Whereas here, Mr. Dunham having worked at ARCA and claiming in his patent the exact same process and did not dispose that to the patent office and then later admitted he did not invent those steps, I don't know how you could have a plainer case of bad faith for purposes of the objective bad faith standard. Unless you're going to use the presumption of validity as Judge Schottler did to essentially set up a wall that you could not scale. Because she just said because there's a presumption of validity, I can't find that you've satisfied the objectively baseless test. That is not the law. We've presented sufficient evidence upon which this court  we ask that we be given the opportunity to have this long pending case decided by a jury and not by a judge. Thank you. Thank you, Mr. Warren. Mr. Lewis, thank you to the case just argued as submitted.
judges: Scullin, Silverman, Graber